**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, as subrogee of Puerto Rico Supplies Co. Inc., <br><br>    Plaintiff,<br><br>      v.<br><br>CROWLEY LINER SERVICES, INC., ET. AL.<br>    Defendants. | CIV. NO. 08-1745(PG) |

**OPINION AND ORDER**

Before the Court stands Crowley Liner Services, Inc.'s ("Crowley") motion for summary judgment. The instant action was filed by Fireman's Fund Insurance Company ("FFI") as a subrogee of Puerto Rico Supplies, Co., Inc. ("Puerto Rico Supplies"). FFI advanced negligence, gross negligence, recklessness, breach of contract and bailment claims. FFI also sued pursuant to the Harter Act, 46 U.S.C. §§ 30701–30707,[1] the Carmack Amendment, 49 U.S.C. § 14706, and the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701.[2] For the reasons set forth below, Crowley's motion is **GRANTED IN PART AND DENIED IN PART**.

**I. Background**

---

[1] The Harter Act was formerly codified as 46 U.S.C. app. §§ 190–196.

[2] COGSA was re-codified and now appears as a note following 46 U.S.C. § 30701. See Kellaway Intermodal & Distribution Sys., Inc., v. The Gillette Co., 578 F.Supp.2d 304, 308 n. 2 (D.Mass. 2008)(stating that no changes to the substance of COGSA were intended).

CIV. NO. 08-1745 (PG) Page 2

Plaintiff filed the instant complaint on July 8, 2008 against Crowley and Capitol Security Police, Inc. ("Capitol"). (Docket No. 1). Crowley filed its motion for summary judgment on October 18, 2010. (Docket No. 37) FFI filed its response to Crowley's motion on November 19, 2010. (Docket No. 51). Crowley then filed a reply to Plaintiff's response on December 10, 2010, and accompanied that motion with an additional statement of uncontested facts, which was filed on December 13, 2010. (Docket No. 56 and Docket No. 57).

The following factual narrative is derived from facts that are deemed uncontested by the Court because they were included in the motions for summary judgment and statements of fact, as well as oppositions, and were agreed upon or properly supported by the evidence and not genuinely opposed.

Puerto Rico Supplies annually imports approximately 4,000,000 cartons of cigarettes. On or before July 11, 2007, Puerto Rico Supplies Co. Inc., purchased a quantity of cigarettes from Lorillard, Inc., in North Carolina for resale in Puerto Rico. The cigarettes were placed in a shipping container and booked for shipment from the port of Jacksonville, Florida to the port of San Juan. The shipments of cigarettes from Lorillard, Inc., were covered and insured through FFI's Open Marine Cargo Policy for Puerto Rico Supplies effective on and after December 21, 2006.

The transportation of the shipping container was conducted pursuant to a Transportation Service Agreement dated February 1, 2007 between Crowley and Premium Brands. This agreement lists Puerto Rico Supplies Co. Inc., as an affiliate. The container was loaded on a barge and transported to the port of San Juan. Upon arrival at the Crowley yard, the container was to be picked up by a trucker and transported it to a bonded warehouse, where the cigarettes were to await further distribution. When the container arrived, Crowley notified Puerto Rico Supplies that it would be available for pick up on July 17, 2007.

On July 18, 2007, a trucker arrived at the Crowley yard to pick up the container but it could not be located. Upon investigation it was discovered that Crowley and Capitol had released the container on July 17, 2007 to an unauthorized trucker.

Some but not all of the cigarettes were later recovered by law enforcement officials investigating the theft. Puerto Rico Supplies submitted a claim to FFI in the amount of $729,946.33 for the value of the unrecovered cigarettes. FFI reimbursed Puerto Rico Supplies Co. Inc., in this amount and Plaintiff initiated this subrogation action against Crowley and Capitol, alleging that they were liable for the damages sustained by Puerto Rico Supplies.

On September 30, 2010, Crowley filed a motion for partial summary judgment. In its motion, Crowley asserted that to the extent that it is liable for the stolen cigarettes, its liability is limited to $75,000.00, the amount of insurance it provided on the shipment based on the Transportation Service Agreement, the bill of lading and the applicable tariff. On October 20, 2010, Capitol filed its own motion for summary judgment, in which it asserts that it is a third party beneficiary of the defenses and limitations of liability afforded to Crowley under the bill of lading, the Transportation Service agreement and the applicable tariff.

Capitol and Crowley signed a contractual agreement for Capitol to provide unarmed and armed guard services at designated locations in Puerto Rico on May 24, 2004. Said contract states that Capitol was an independent contractor and not an agent or employee of Crowley.

**II. Discussion**

**A. Motion for Summary Judgment Standard**

CIV. NO. 08-1745 (PG)                                                              Page 4

    A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (internal citations omitted); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if it could be resolved in favor of either party); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986). In order for a disputed fact to be considered material it must have the potential "to affect the outcome of the suit under governing law. Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (citing Liberty Lobby, Inc., 477 U.S. at 247-248); Prescott, 538 F.3d at 40 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

    The ethos of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Fed. R. Civ. P. 56 (e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. Shalala, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The nonmovant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

CIV. NO. 08-1745 (PG)                                                    Page 5

The nonmovant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material'." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); see also Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a nonmovant may shut down a summary judgment motion only upon a showing that a trialworthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Liberty Lobby, Inc., 477 U.S. at 247-248. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the nonmovant for a jury to return a verdict in its favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000)(internal citations omitted). The burden placed upon the nonmovant is one of production rather than persuasion. In other words, in weighing a nonmovant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

**B. Crowley's motion for summary judgment**

CIV. NO. 08-1745 (PG)                                                  Page 6

*1. Liability under the insured bill of lading*


A bill of lading is the basic transportation contract of carriage between a shipper and a carrier. Southern Pacific Transp. Co. v. Commercial Metals Company, 456 U.S. 336 (1982).

COGSA applies when there is a contract for carriage of goods between a foreign port and a port of the United States. Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc., 896 F.2d 656, 659 (1st Cir. 1990). However, shipments between ports of the United States and the Commonwealth of Puerto Rico are not governed by COGSA, but are instead governed by the Harter Act. Federal Ins. Co. v. Transconex, Inc., 430 F.Supp. 290, 293 (D.P.R. 1976). Nonetheless, it has been held that where bills of lading expressly incorporate the terms of the COGSA, the rules of the COGSA will apply. Id. Moreover, tariff provisions are binding on both the carrier and the shipper if they are properly filed with an administrative agency. Commonwealth of Puerto Rico v. Sea-Land Services, Inc., 349 F.Supp. 964, 971 (D.P.R. 1970).

The parties do not dispute that the bill of lading, tariff, and the transportation service agreement govern the relationship between Puerto Rico Supplies and Crowley. Neither do the parties dispute that COGSA was incorporated in the bill of lading and extended beyond the tackle-to-tackle period. The bill of lading explicitly extends COGSA's protections during the time that the goods are in the custody of Crowley once they have been discharged from the ship. (Docket 65, Exhibit 1). The Paramount Clause in the bill of lading also states that COGSA shall apply "… before the goods are loaded on and/or after the goods are discharged from the vessel; and throughout the entire time the goods are in the custody or are the responsibility of the Carrier, whether acting as carrier, bailee, stevedore or terminal operator." (Docket No. 65, Exhibit 1).

CIV. NO. 08-1745 (PG)                                                    Page 7

    Nonetheless, the parties disagree as to the amount of Crowley's liability. Crowley asserts that its liability is limited to $75,000, the amount of marine insurance coverage for the stolen cigarettes under the applicable tariff. In contrast, FFI avers that the marine insurance coverage in the amount of $75,000 provides a floor, not the ceiling to Crowley's liability.

    In Chadbourn-Caribbean Industries v. Autoridad de las Navieras de Puerto Rico, the parties were in disagreement over whether the shipper was covered by all-risk insurance. 428 F.Supp 493, 494 (D.P.R. 1977). The shipper claimed that it was entitled to all-risk insurance. In contrast, the carrier argued that under the tariff all-risk insurance for used machinery was excluded. The carrier further argued that the shipper's failure to disclose in the bill of lading that the cargo was a used piece of machinery voided any insurance purchased on the machinery. Our sister court held that tariff provisions are binding on the shipper and the carrier, and as a result the shipper was limited to the remedy that was clearly stated by the tariff. Id. at 495. The Chadbourn-Caribbean Industries court further held that its decision did not decide or address the carrier's possible liability for loss or damages arising from negligence or fault, if proven. Id.

    Crowley relies on Chadbourn-Caribbean Industries for the proposition that the marine insurance provided limits its liability to $75,000. Crowley also cites to St. Paul Fire and Marine Ins. Co. v. Marine Transp. Services Sea-Barge Group, Inc., 727 F.Supp. 1438 (S.D.Fla. 1989) and Granite State Ins. Co. v. M/V Caraibe, 825 F.Supp. 1113 (D.P.R. 1993), in an effort to bolster its argument.

    Crowley has effectively shown that the tariff in dispute limits FFI's remedies. However, Crowley does not address the enforcement of the tariff within the COGSA context. Moreover, Chadbourn-Caribbean Industries leaves

CIV. NO. 08-1745 (PG)                                                    Page 8

open the possibility of additional liability in addition to the marine insurance provided in the tariff. As a result, it is unclear to the Court why Crowley could not face additional liability under COGSA. In St. Paul Fire and Marine Ins. Co., the Southern Florida District Court addressed whether or not the carrier's Open Cargo Policy insurance was excess insurance above the insurance that the shipper had already placed on the cargo. This decision does not discuss whether or not marine insurance provided by a carrier constitutes a waiver of liability under COGSA. Similarly, Granite State Ins. Co. does not clearly support Crowley's position. The Granite State Ins. Co. decision addressed the $500 per package or customary freight unit limitation on liability under COGSA, which the Court addresses in the following section. The Granite State Ins. Co. decision does not readily explain whether or not marine insurance coverage provided under a bill of lading and a published tariff constitutes a waiver of COGSA liability.

   *2. The $500 per package limitation under COGSA*

     FFI argues with particular vehemence that Crowley's limitation is limited, to the sum of $466,000 and not $75,000. FFI's theory is premised on COGSA's default liability limitation of $500 per package. COGSA states that:

> "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained."

46 U.S.C. 30701(5).

"COGSA speaks of two types of shipping quanta in determining the limited liability of a carrier: $500 per package or, in the case of goods not shipped in packages, per customary freight unit..."[3] Granite State Ins. Co. v. M/V Caraibe., 825 F.Supp. 1113, 1125 (D.P.R. 1993).

Determining what is a COGSA package has been the source of considerable debate. Moreover, the First Circuit has yet to adopt an analytical approach for determining what constitutes a COGSA package. However, the Second Circuit has created a framework for dealing with these cases. The Second Circuit distinguishes between container cases and non-container cases. "In container cases, the carrier contends that the shipping container, which is typically a 40' aluminum box into which cargo is stuffed, represents the applicable package. In non-container cases, neither party contends that the shipping container qualifies as the COGSA package." Royal Ins. Co. of America ex rel. Warner Lambert Co. v. M/V MSC DYMPHNA, No. 01 CIV 9164 (PKL), 2004 WL 369268 at * 3 (S.D.N.Y. Feb. 27, 2004). In this case, FFI contends that the bill of lading shows that there were 960 packages,[4] while Crowley has failed to

---

[3] The customary freight unit ("CFU") is generally the unit upon which the freight charge is based for the shipment at issue. To determine the CFU the Court looks to the parties' intent as expressed in the bill of lading, applicable tariff, and other sources. Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994)(citing Croft & Scully Co. v. M/V Skulptor Vuchetich, 664 F.2d 1277, 1282 (5th Cir. 1982); and FMC Corp. v. S.S. Marjorie Lykes, 851 F.2d 78, 80 (2d Cir.1988)).

[4] FFI argues that there were 960 packages because the bill of lading states in column 22 that 960 master cartons were included in the container.

CIV. NO. 08-1745 (PG)                                                    Page 10

properly address the issue. Crowley states that if this bill of lading were not insured then its liability would be limited to $500. Thus, Crowley understands that the container itself is a COGSA package.

The Second Circuit held that in container cases courts must take a critical look at clauses purporting to define the container as the COGSA package. Monica Textile Corp. v. S.S. Tana, 952 F.2d 636, 641 (2d Cir. 1991) (citing Smythgreyhound v. M/V Eurygenes, 666 F.2d 746, 752 (2d Cir. 1981)). The reason for this skepticism is that such agreements run counter to the purpose of COGSA. Id. (citing Binladen BSB Landscaping v. M/V "NEDLLOYD ROTTERDAM", etc., 759 F.2d 1006, 1011-17 (2d Cir. 1985) ("classification of [the container] as a 'package' would violate the purpose of [COGSA] § 4(5) by permitting the carrier to limit its liability unduly"); and Mitsui & Co., Ltd. v. American Export Lines, Inc., 636 F.2d 807, 817 (2d Cir. 1985))).

The bill of lading in this case discloses on its face that 960 master cartons were stowed in the container, which triggers Mitsui's presumption that the container is not the COGSA package. Mitsui, 636 F.2d at 821; see also Smythgreyhound, 666 F.2d at 752. In theory, the Mitsui rule has an exception that allows for the container to be treated as a package if the bill of lading discloses that the parties have so agreed in explicit and unequivocal terms. Monica Textile Corp., 952 F.2d at 642. However, the Court finds no evidence of such an agreement and can sidestep the Mitsui exception discussion under the facts alleged.

In Binladen BSB Landscaping, the Second Circuit developed four principles that may be used to classify cargo as COGSA packages. These four principles are: 1) looking to the bill of lading as a primary source of understanding the nature of the shipment; (2) determining if an item or items have been prepared for transport; (3) establishing that a large-scale container should not be defined as a package if the bill of lading describes

the container's subunits or if the parties expressly agree that the container is not a COGSA package; and (4) recognizing that if the bill of lading does not describe the containerized cargo in terms of individual packages, the freight should be considered goods not shipped in packages and prospectively as COGSA packages. Granite State Ins. Co., 825 F.Supp. at 1125 (citing Binladen BSB Landscaping, 759 F.2d at 1011-17). Cartons, or in this case boxes, can qualify as COGSA packages as each is the result of some preparation of the cargo item for transportation that facilitates handling, but which does not necessarily conceal or completely enclose the goods. Binladen BSB Landscaping, 759 F.2d at 1012.

The Eleventh Circuit extracted a two-part test from the Binladen holding, stating that: (1) when a bill of lading discloses the number of COGSA packages in a container, the liability limitation of section 4(5) applies to those packages; but (2) when a bill of lading lists the number of containers as the number of packages, and fails to disclose the number of COGSA packages within each container, the liability limitation of section 4(5) applies to the containers themselves. Granite State Ins. Co., 825 F.Supp. at 1125 (citing Hayes-Leger Associates, Inc. v. M/V Oriental Knight, 765 F.2d 1076, 1080-81 (11th Cir. 1985)).

In this case, the bill of lading lists the number one under column (20), which identifies the number of trailers or packages. (Docket No. 65, Exhibit 1). However, the description of cargo in column (22) clearly illustrates that 643 CS Newport M 80 boxes, 300 CS Newport M 100 boxes and 17 CS Newport LT M 80 boxes were shipped. (Docket No. 65, Exhibit 1). In total, 960 boxes of CS Newport were shipped in the same container. If the $500 per package limitation were applied to the 960 master cartons, the total amount of liability would be $480,000. However, some of the master cartons were recovered and only 932 remained missing. Thus, the liability under the $500

CIV. NO. 08-1745 (PG)                                                    Page 12

per package limitation would be $466,000. The First Circuit held that courts faced with interpreting COGSA have consistently determined that the $500 limitation serves as a minimum level of valuation. Hanover Ins. Co. v. Shulman Transport Enterprises, Inc., 581 F.2d 268, 272-73 (1st Cir. 1978). The First Circuit further stated that under COGSA the $500 limit represents a binding allocation of risks that cannot be reduced by contractual agreement. Id.

In light of the relevant caselaw, the Court concludes that at a minimum there exists a genuine issue of material dispute regarding Crowley's liability. Crowley invokes COGSA in order to insulate itself from FFI's negligence, gross negligence, recklesnees, bailment, and breach of contract claims. Simultaneously, Crowley implies that COGSA's $500 per package limitation is superseded by the tariff in this case. However, Crowley does not provide the Court with any relevant caselaw that would assist it in reaching such a conclusion. As a result, the Court is unable to dismiss FFI's COGSA claim.

*3. Claims under negligence, gross negligence, recklessness, breach of contract, bailment, the Harter Act and the Carmack Act*

Crowley avers that FFI is precluded from advancing a cause of action under negligence, gross negligence, recklessness, breach of contract, bailment or any other common law principles because these are barred by COGSA.

"Neither the Supreme Court nor the Court of Appeals for the First Circuit has ruled directly on this issue." Mangual-Saez v. Brilliant Globe Logistics, Inc., No. 04-2253 (JAG), 2005 WL 290155 at * 10 (D.P.R. Jan. 27, 2005). Moreover, the courts that have addressed this issue have issued

CIV. NO. 08-1745 (PG) Page 13

varying and oft conflicting opinions. Id. (presenting disparate holdings on whether or not COGSA bars causes of action that sound in tort).

COGSA is silent on its preemptive scope. However, the text of the statute implies that Congress intended for COGSA to supersede other laws and provide an exclusive remedy. Continental Ins. Co. v. Kawasaki Kisen Kasha, Ltd., 542 F.Supp.2d 1031, 1034 (N.D. Cal. 2008)(citing Polo Ralph Lauren, L.P., v. Tropical Shipping & Constr. Co., 215 F.3d 1217, 1220 (11th Cir. 2000). In accordance with COGSA's own terms, the statute applies between the tackles. "The statute physically preserves laws that apply before or after the tackle-to-tackle period." Id. (citing 46 U.S.C. § 30701). The Eleventh Circuit held in Polo Ralph Lauren, L.P. that COGSA preempted negligence claims, breach of contract, and bailment when it applies.

The Court agrees with the approach espoused in Continental Ins. Co. and Polo Ralph Lauren, L.P. As a result, the Court believes that COGSA provides an exclusive remedy. COGSA forms a system of regulations under which state law has no bearing. Continental Ins. Co., 542 F.Supp.2d at 1035.

> "COGSA imposes affirmative duties on carriers and carves out immunities for uncontrollable losses. It protects shippers by voiding agreements that limit liability below $500 a package and it lays out a burden-shifting procedural scheme wherein the carrier bears the burden of proving no fault. Its statute of limitations bars suits filed after a year from delivery. In short, COGSA is a comprehensive system of regulations that cover[s] the entire subject and leaves no room for state law."

Id. (internal quotation marks omitted).

Taking into account Eleventh Circuit precedent, as well as Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 28-29 (2004), which held that state law must yield to COGSA where it applies, the Court finds that COGSA

CIV. NO. 08-1745 (PG)                                                    Page 14

preempts state law. The Court also notes that COGSA provides the kind of regulatory scheme that the Supreme Court found to be completely preemptive. Continental Ins. Co., 542 F.Supp.2d at 1035 (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-11 (2003)). Thus, any common law or state law claims are preempted.

The Court also understands that FFI's Harter Act claims are preempted by COGSA. The Court is aware of the Second Circuit's holding that in situations where the shipper and the carrier agree to extend COGSA's protections and immunities via special agreement, the agreement is governed by the Harter Act. U.S. v. Ultramar Shipping Co., Inc., 685 F.Supp. 887, 896 (S.D.N.Y. 1987), *aff'd* 854 F.2d 1315 (2d Cir.1988); see also Caterpillar Overseas, S.A. v. S.S. Expeditor, 318 F.2d 720 (2d Cir. 1963). Nonetheless, the Court remains unswayed by this holding because the facts in Ultramar Shipping Co., Inc. are substantially different from those in the case at hand. In Ultramar Shipping Co., Inc., the court addressed whether or not the goods aboard the carrier's vessel had been discharged when the goods were unloaded onto six other vessels in an act of lighterage.[5] The Second Circuit concluded that the goods had been discharged and as a result the Harter Act, rather than COGSA, governed the dispute.

The facts in Ultramar Shipping Co., Inc., do not readily help us resolve the dispute in this case. In the present dispute, the parties agree that COGSA protections and immunities were contractually extended to include the period after discharge from the vessel. Similarly, the Court concludes that the facts in Caterpillar Overseas, S.A. do not readily assist in resolving the present dispute.

---

[5] Lighterage is defined as loading and unloading of goods between a ship and a smaller vessel, called a lighter, that is able to use a restricted port or dock. BLACK'S LAW DICTIONARY 1011-12 (9th ed. 2009).

CIV. NO. 08-1745 (PG)                                                    Page 15

As a result, the Court concludes that COGSA provides the exclusive remedy in the case at hand and that FFI's Harter Act claims should be dismissed. See Sabah Shipyard Sdn. Bhd. v. M/V Harbel Tapper, 178 F.3d 400, 406-410 (5th Cir. 1999) (finding ample support for the proposition that parties may contractually incorporate COGSA's $500 liability limitation to the periods of carriage before loading and after discharge from the vessel when the Harter Act would otherwise apply); Antilles Insurance Co. v. Transconex, Inc., 862 F.2d 391 (1st Cir. 1988)(holding that the Harter Act did not invalidate a contractual provision limiting the carrier's liability to $50 per shipment.)

Taking these decisions into account, the Court concludes that FFI's negligence, gross negligence, recklessness, breach of contract, and bailment claims should be dismissed. Similarly, because the bill of lading in this case extended the COGSA's protections, FFI's claims pursuant to the Harter Act should also be dismissed.

Lastly, the Court finds it appropriate to dismiss FFI's Carmack Amendment claims, which the Court finds to be inapplicable in the case at hand. Section 14706 of the Carmack Amendment imposes liability on motor carriers, on freight forwarders who procure transportation by motor carrier, and on any other carrier who provides transportation by motor carrier, rail carrier, or service by a freight forwarder. There is no evidence that Crowley fits one of these definitions. As a result, FFI's Carmack Amendment claim is dismissed.

### III. Conclusion

For the reasons explained above, the Court **GRANTS IN PART AND**

CIV. NO. 08-1745 (PG)                                                    Page 16

**DENIES IN PART** Crowley's motion for summary judgment. The Court finds it appropriate to dismiss FFI's negligence, gross negligence, recklessness, braeach of contract, bailment, Harter Act, and Carmack Amendment claims. However, FFI's COGSA claim remains.

   **IT IS SO ORDERED AND ADJUDGED.**

   In San Juan, Puerto Rico, August 16, 2011.


                                        S/ JUAN M. PEREZ-GIMENEZ
                                        JUAN M. PEREZ-GIMENEZ
                                        U.S. DISTRICT JUDGE